[Cite as *Taylor v. Taylor*, 2012-Ohio-4097.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

MARY RUTH TAYLOR

    Appellee

    v.

RAYMOND MICHAEL TAYLOR

    Appellant

C.A. No.    11CA010071

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    06DU066628

DECISION AND JOURNAL ENTRY

Dated: September 10, 2012

BELFANCE, Judge.

**{¶1}** Raymond Taylor appeals from the final decree of divorce designating Mary Ruth Taylor the residential parent of their daughter. For the reasons set forth below, we affirm.

I.

**{¶2}** Mr. Taylor and Ms. Taylor married in 1995 and had one child together: K.R.T. In 2006, Ms. Taylor filed for divorce. During the pendency of the matter, the parties entered into a shared parenting plan where the parties alternated physical possession of the child daily from Monday through Thursday and alternated the weekends. Mr. Taylor and Ms. Taylor proved unable to communicate effectively about K.R.T. K.R.T. disliked changing homes every day and ultimately her grades declined precipitously. Ms. Taylor moved to terminate the shared parenting plan and sought custody of K.R.T. Mr. Taylor opposed any modification to the shared parenting plan.

{¶3}    After Ms. Taylor moved to terminate the shared parenting plan, the trial court issued what purported to be the final divorce decree. *Taylor v. Taylor*, 9th Dist. No. 10CA009790, 2010-Ohio-5794, ¶ 3. However, the decree expressly provided that the matter of the shared parenting plan would be resolved at a later date. *Id.* Following an in camera interview with K.R.T. and a hearing, the trial court terminated the shared parenting plan, awarded custody to Ms. Taylor, and granted Mr. Taylor companionship time every other weekend.

{¶4}    Mr. Taylor attempted to appeal, but this Court dismissed the appeal for lack of a final, appealable order. *Id.* at ¶ 7-9. On August 26, 2011, the trial court issued a final decree of divorce that incorporated the journal entry awarding custody to Ms. Taylor.[1] Mr. Taylor again appealed, raising three assignments of error for our review. For ease of discussion, we have rearranged and consolidated his assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT FOUND A CHANGE IN CIRCUMSTANCES OCCURRED BASED UPON THE EVIDENCE IN THIS CASE IN LIGHT OF ITS PREVIOUS FINDING THAT NO CHANGE OF CIRCUMSTANCES OCCURRED.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT TERMINATED THE SHARED PARENTING PLAN BASED UPON CONSIDERATIONS THAT OCCURRED PRIOR TO AND WERE CONTEMPLATED AT THE TIME OF THE DIVORCE DECREE.

---

[1] The trial court subsequently entered another journal entry declaring the divorce decree to be a nunc pro tunc. However, the August 26, 2011 entry could not be a nunc pro tunc because it modified a substantial right rather than seeking to correct a clerical error.

{¶5}    In Mr. Taylor's first and third assignments of error, he argues that the trial court erred when it found a change of circumstances.  Mr. Taylor's arguments necessarily presume that the trial court's decision on Ms. Taylor's motion to modify the shared parenting plan occurred subsequent to the final decree of divorce; however, this is not the case.

{¶6}    Until the trial court issued its August 26, 2011 entry, no final decree of divorce existed.  Therefore, the trial court's custody determination had to be based upon "considerations that occurred prior to * * * the divorce decree."  Furthermore, R.C. 3109.04(E) requires that a change of circumstances have occurred before the trial court can "modify a prior decree allocating parental rights and responsibilities * * *."  Generally, the requirements of R.C. 3109.04 apply to "a final appealable order, not an interlocutory, temporary order."  *See State ex rel. Thompson v. Spon*, 83 Ohio St.3d 551, 554 (1998).  Because there was no final decree of divorce, the original shared parenting agreement was actually a temporary order, and, therefore, the trial court was not required to find a change of circumstances prior to allocating parental rights and responsibilities.  *See id.*  Although the trial court's determination was unnecessary, its error was harmless because it could have proceeded to determine the allocation of parental rights and responsibilities without analyzing whether there had been a change in circumstances.

{¶7}    Accordingly, Mr. Taylor's first and third assignments of error are overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT'S FINDING THAT IT WAS IN THE BEST INTEREST
OF THE CHILD TO GRANT SOLE CUSTODY TO THE MOTHER WAS AN
ABUSE OF DISCRETION.

{¶8}    In his second assignment of error, Mr. Taylor does not argue that the trial court should have ordered shared parenting; rather, he argues that the trial court should have

designated him as the sole residential parent and legal custodian of K.R.T. rather than Ms. Taylor. We disagree.

{¶9} "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * * the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). "[F]or a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion." *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶10} R.C. 3109.04(F)(1) sets forth factors for the trial court to consider when determining the best interest of the child:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an

abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

However, while the trial court must consider these factors, R.C. 3109.04(F)(1) is not an exclusive list.

{¶11} In the trial court's journal entry awarding Ms. Taylor custody of K.R.T., the trial court considered the R.C. 3109.04(F)(1) factors. The trial court noted that both parents wanted custody of K.R.T. *See* R.C. 3109.04(F)(1)(a). According to the trial court, K.R.T. requested that she have a more standard visitation schedule with her father. *See* R.C. 3109.04(F)(1)(b). The court found K.R.T.'s relationships with both parents to be problematic, noting that Ms. Taylor "continues to accommodate and enable" K.R.T.'s immaturity while Mr. Taylor "goes to an extreme[]" in his attempts to treat K.R.T. as someone who is about to enter high school. *See* R.C. 3109.04(F)(1)(c). However, the court also found that Ms. Taylor had a more loving relationship with K.R.T. while Mr. Taylor had a more age-appropriate relationship with her. *See id.*

{¶12} The trial court noted that Mr. Taylor, Ms. Taylor, and K.R.T. wanted K.R.T. to remain in her current school district. *See* R.C. 3109.04(F)(1)(d). The court found that Mr. Taylor and Ms. Taylor were mentally and physically fit but again noted that K.R.T. was immature for her age. *See* R.C. 3109.04(F)(1)(e). The court asserted that it did not believe R.C. 3109.04(F)(1)(f) to be relevant to its determination, although it noted that Mr. Taylor had allowed Ms. Taylor additional time with K.R.T. on two occasions and that Ms. Taylor had refused to give Mr. Taylor additional time the two times he had asked, telling him that she and K.R.T. already had plans. The court found that R.C. 3109.04(F)(1)(g) and (h) were not relevant to its determination of custody because neither parent had been required to pay child support and there was no evidence of abuse or neglect. The court also found that there was no evidence that either parent had continuously and willfully interfered with the other parent's companionship time or that either parent was planning to move out of Ohio. *See* R.C. 3109.04(F)(1)(i)-(j).

{¶13} Upon a review of the record, we cannot say that the trial court abused its discretion when it determined that Ms. Taylor should be the residential parent and legal custodian of K.R.T. While Mr. Taylor is correct that the factors do not weigh heavily in favor of Ms. Taylor, they do not weigh heavily in his favor either. It is important to keep in mind that the parties had attempted a shared-parenting plan and that the trial court found the arrangement to have been proven to be unworkable due to the complete disintegration of communication between Mr. Taylor and Ms. Taylor. K.R.T. also expressed strong dislike of the companionship arrangement contained in the shared-parenting plan to the court, especially the fact that she was forced to alternate between her parents' homes every school night. Furthermore, during the term of the shared-parenting plan, K.R.T. began having trouble in school. She failed to complete assignments and her grades declined precipitously as her class-ranking fell from 91st to 117th.

In making the custody determination, it appears that the trial court relied upon K.R.T.'s expressed desire to have more standard companionship time with Mr. Taylor, implicitly wishing to live with Ms. Taylor. The trial court was cognizant that K.R.T. was nearly 14-years-old at the time and was about to enter high school where she would have greater demands on her schedule.

{¶14} Mr. Taylor argues that, since all the parties agree that K.R.T. should remain in her current school district, he is the logical choice to have custody because he lives in the district and Ms. Taylor does not. However, Ms. Taylor testified that she would be able to keep K.R.T. in the system through open enrollment.

{¶15} Mr. Taylor also suggests that it was inappropriate to grant custody to Ms. Taylor because she already infringes upon his companionship time with K.R.T. by texting her quite often when she is at his house. On the other hand, Mr. Taylor has disrupted Ms. Taylor's time with K.R.T. by requesting police go to her house to check on K.R.T. late at night on two separate occasions. He also requested the police oversee a transfer of K.R.T. on Easter morning after Ms. Taylor was 10 minutes late because she and K.R.T. had been at Easter Mass. Mr. Taylor's behavior led the trial court to believe that he was misusing his position as a sheriff deputy to harass Ms. Taylor.

{¶16} Under the circumstances, we cannot conclude the trial court's decision to award Ms. Taylor custody was unreasonable, unconscionable, or arbitrary. Accordingly, his second assignment of error is overruled.

III.

{¶17} Mr. Taylor's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

8

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

JONATHAN E. ROSENBAUM, Attorney at Law, for Appellant.

JAMES N. TAYLOR, Attorney at Law, for Appellee.